MANION, Circuit Judge, concurring in the judgment. The Supreme Court’s decisions in Knox v. Service Employees International Union, Local 1000, 567 U.S. 298, 132 S.Ct. 2277; 183 L.Ed.2d 281 (2012), and Harris v. Quinn, — U.S. —, 134 S.Ct. 2618, 189 L.Ed.2d 620 (2014), at the very least mean that public employees who choose not to join a union can’t be required to contribute to the union without their affirmative consent. The district court concluded that since many of the home care providers supported the union and didn’t oppose the “fair-share” fees, those providers., did not accrue a compensable First Amendment injury. The problem, however, is that the care providers, now belatedly called the objectors, were not-first given the. choice whether, or, not,to pay the fee before the union seized their money. Depriving non-members of the choice whether to pay the fee in the first place is a major fault in the union’s collection process. Each and every proposed 'class member had fees seized without his or her consent. That is enough to establish a compensable injury. ■Nevertheless, I concur in the court’s judgment. The district court’s mistakes led to its erroneous conclusions that the proposed class failed to satisfy two of the. four prerequisites for certification under Rule 23(a). However, the district court also concluded under Rule 23(b)(3) that: (1) issues common to class members would not predominate over individual issues; and (2) a class action would not be superior to individual actions. These findings were probably not an abuse of discretion. Therefore, I would affirm the denial of certification on those grounds alone. The district court first reasoned that because each proposed class member would have to prove that he or she opposed the fair-share fees in order to recover, the proposed class could not meet Rule 23(a)’s commonality requirement. Riffey v. Rauner, No. 10-CV-02477, 2016 WL 3165725, at *6 (N.D. Ill. June 7, 2016). According to the court,- an unwilling nonunion member is injured by the seizure of his or her money only if the non-member subjectively didn’t want to support the union. See id. at *3. So in the district court’s view, the proposed class action really amounts to about 80,000 individual cases wherein home care providers will have to prove that they didn’t want their money transferred to the union. That is not so. The Supreme Court’s Knox decision should have settled this question. There, two groups of employees filed a class-action suit against SEIU, alleging that the union unconstitutionally required them to contribute money to SEIU’s political activism. Knox, 567 U.S. at 305-06, 132 S.Ct. 2277. One group of employees had object- • ed to the -forced, contributions,. but the second group had not been given the opportunity to do so. Those in the latter group argued that they should have received a new opportunity to object after SEIU levied a new special assessment. Id. The Supreme Court agreed, holding that there was no justification for forcing nonmembers to opt out of, rather than opt into, the assessment. See id, at 312, 132 S.Ct. 2277. Significantly, the Court observed that “[a]n opt-out system creates a risk that the fees paid by nonmembers will be used to further political and ideological ends with which they do not agree.” Id. (emphasis added). The same risk—that non-members may be forced to support the union when they don’t wish to do so— is present here as well. As the Knox Court rhetorically asked, “isn’t it likely that most employees who choose not to join the union that represents their bargaining unit prefer not to pay the full amount of union dues?” Id. Of course, the answer is yes, both for the plaintiffs in Knox and the home care providers in this case. It is not controversial to say that most people would prefer not to pay an assessment that isn’t required. And even if that weren’t so obvious, “[cjourts ‘do not presume acquiescence in the loss of fundamental rights.’” Id. (quoting Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 682, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)). Harris held that the seizure of fair-share fees from objecting home care providers violates the First Amendment. Thus, judges cannot assume that home care providers who declined to join' SEIU wanted to give up their right not to pay the fair-share fées when those providers were not given an opportunity to object. That is true even if many non-members were not hostile to the union. The. court’s citations to compelled-speech cases like West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), and Wooley v. Maynard, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), are in-apposite. With respect to injury, these cases present a sort of catch-22. Someone who is not bothered by the compelled speech at issue (e.g., the Pledge of. Allegiance in Barnette and “Live Free.or Die” on a license plate in Wooley) is very unlikely to sue. The same is true in Establishment Clause cases, which “are invariably mounted by people offended by the government’s association with religion.” Doe ex rel. Doe v. Elmbrook Sch. Dist., 687 F.3d 840, 876-77 (7th Cir. 2012) (en banc) (Posner, J., dissenting). In other words, anyone who challenges the government’s actions in such cases by definition has an injury, otherwise they wouldn’t have sued. But it doesn’t follow that those who choose not to sue have not been harmed. As the court acknowledges, “a requirement to recite the Pledge of Allegiance every morning might impermissibly impinge upon all students’ rights to choose whether to do so..Maj. Op. at 562. I would add that those who choose not to sue are still compelled to speak; they simply don’t care enough to seek redress, either because they support the speech or it is not worth their time to complain about it. That doesn’t mean that the non-objectors don’t have a First Amendment injury, only that they have chosen not to assert one. Their damages might be nominal, but their First Amendment injury exists all the same. Fortunately, we don’t have to deal with that problem in this case because the proposed class members all have tangible monetary injuries. And as the Supreme Court explained, those injuries derive from the exaction of “funds from nonmembers without their affirmative consent.” Knox, 567 U.S. at 322, 132 S.Ct. 2277. Each and every SEIU non-member had fees exacted without his or her affirmative consent. Some might not care enough to seek redress, but like the students required to recite the Pledge, they have been compelled to speak nonetheless. That is their injury. If (as the union contends) some of the proposed class members really wanted to support SEIU, those individuals are free to not claim their refunds or to donate to the union on their own. That is their prerogative. But after Knox and Harris, public-sector unions can no longer seize money from non-members without their consent. Therefore, those who had funds unconstitutionally seized may recover their money irrespective of their feelings towards the union. Next, the district court concluded (and the court apparently agrees) that the representative plaintiffs can’t adequately represent the class as required by Rule 23(a)(4) because class members may have differing views about SEIU. The district court reasoned that “a class representative who wants to undermine the union is not likely to be a suitable representative for a group that includes people who have no such hostility.” Riffey, 2016 WL 3165725, at *7. That analysis is too broad. A class member who wants to recover his money doesn’t necessarily want to undermine the union. He may just not want to pay for what the union labels “fair share,” but what the employee thinks is a waste of money. Moreover, the assumed disagreements between proposed class members have nothing to do with the injury each suffered and the compensation sought. Instead, as the Eighth Circuit explained, “the antagonism which will defeat maintenance of a class action must relate to the subject matter in controversy.” Reynolds v. Nat’l Football League, 584 F.2d 280, 286 (8th Cir. 1978) (quoting Sperry Rand Corp. v. Larson, 554 F.2d 868, 874 (8th Cir. 1977)). Here, the matter in controversy is the refund of seized fair-share fees. Even if some members of the proposed class want to destroy SEIU while others don’t, each class member has an identical interest in the return of his or her money. That is to say, none of the representative plaintiffs’ claims “conflict[ ] with the economic interests of the class.” Id. And unlike in Gilpin v. American Federation of State, County, & Municipal Employees, AFL-GIO, 875 F.2d 1310, 1313 (7th Cir. 1989), the putative class representatives seek only compensatory damages, not punitive damages that might cause the union severe economic hardship. See Riffey, 2016 WL 3165725, at *7. Differences in ideology among putative class members shouldn’t doom an attempt to recover unconstitutionally taken fees in which each member has an equal stake. Cf. Reynolds, 584 F.2d at 286 (“the mere existence of political divisions or factionalism within a union does not require class decertification” (quoting Sperry Rand Corp., 554 F.2d at 874)). However, while I disagree with the district court’s conclusions on the issues of commonality and adequacy of representation, I would still affirm its decision not to certify the class. That is because the proposed class still must satisfy Rule 23(b)(3)’s requirement that “the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” Yet as the district court noted, now that the “central First Amendment question” in this ease was resolved in Harris, “plaintiffs’ pursuit of class-wide refunds is the most significant issue remaining in the case.” Riffey, 2016 WL 3165725, at *8. That’s a problem for the plaintiffs. Even though the need for individualized damages calculations won’t usually preclude certification, see Messner v. Northshore Univ. HealthSys., 669 F.3d 802, 815 (7th Cir. 2012), in this case damages are the main, if not the only, remaining issue. Therefore, the district court likely did not abuse its discretion by concluding that issues common to the class wouldn’t predominate over individual issues. On superiority, the district court was mostly correct that “there is no longer any reason to concentrate each proposed class member’s claim for damages into a single forum, because, armed with Harris, any individual who did not want to join or support the union can pursue individual relief (with the potential benefit of 42 U.S.C. § 1988 fee-shifting).” Riffey, 2016 WL 3165725, at *8 (citation omitted).[1] In other words, especially with prevailing-party attorneys’ fees available, it is not at all obvious that a class action is superior to other available methods for adjudicating this controversy. The individual non-union menlbers might prefer a class action, but they have all the incentive in the world to pursue their individual claims and should not have any trouble finding attorneys to help them in a case where the merits have mostly been decided and fees are recoverable. With that in mind, I would hold that the district court didn’t abuse its discretion when it concluded that a class action wouldn’t be superior in this case. “The class action is ‘an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.’.” Comcast Corp. v. Behrend, 569 U.S. 27, 33, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01, 99 S.Ct. 2645, 61 L.Ed.2d 176 (1979)). So while I am particularly troubled by the district court’s conclusion that subjective support for the union would extinguish a' potential class member’s First Amendment injury, I nonetheless agree that we should affirm the denial of certification. Under Rule 23(b)(3), the plaintiffs bear the burden of showing that common issues would predominate over individual ones and that a class action would be superior to individual actions. While the district court’s conclusions on these questions are subject to debate, they do not amount to an abuse of discretion. Therefore, I concur only in the judgment. . Of course, as 1 explained above, any nonmember who had his or her fees seized without affirmative consent can recover. Therefore, the class of people who may seek relief should not be limited to those "who did not want to join or support the union.”