## NATIONAL LABOR RELATIONS BOARD v. CHAUTAUQUA HARDWARE CORP.

### No. 56, Docket 22079.

United States Court of Appeals
Second Circuit.

Argued Oct. 3, 1951.

Decided Nov. 2, 1951.

George J. Bott, General Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Samuel M. Singer and Mark C. Curran, all of Washington, D. C., for petitioner.

Edson & Edson and Samuel S. Edson, all of Jamestown, N. Y., for respondent.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

SWAN, Chief Judge.

This is a petition by the National Labor Relations Board for enforcement of its order of January 24, 1951 against Chautauqua Hardware Corporation of Jamestown, N. Y. The Trial Examiner made findings, adopted by the Board, from which he concluded that the respondent had committed unfair labor practices in violation of Section 8(a) (1) and (3) of the Act, 29 U. S.C.A. § 158(a) (1).[1] The respondent contends that the Examiner's findings of fact are not supported by substantial evidence on the record considered as a whole.

The principal finding concerns the motivation of the discharge of two employees in the coloring room, Chiazzese and Martino. These two men, with five or six other employees of the respondent, met with an official of United Steelworkers of America, C. I. O. on the evening of February 28, 1950 and signed union cards. The next day on the company's premises during the lunch hour they solicited other employees to join the union. On March 2nd they were summarily discharged by the president, Mr. Jones. He said nothing to them about their union activity and he testified that he did not know of it until after their discharge; but the Examiner discredited this testimony and accepted that of DeMeyer who testified that Mr. Jones told him on the afternoon of March 1st that the boys in the coloring room were passing out union literature and that he (Jones) "could close the plant down." Upon the hearing he advanced several reasons for discharging the two men, all of which the Examiner found unconvincing. The Examiner's report explains why he thought Mr. Jones' testimony unreliable

1. The Board's decision is reported in 92 N.L.R.B. —— (No. 232).

and why he inferred that the real reason for the discharge of the employees was their union membership. When an issue turns upon the credibility of witnesses, the Examiner's findings are especially entitled to be respected. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456. The timing of their discharge, the fact that the president acted without consulting with supervisor Nania, and the discrediting of his testimony, disputed by DeMeyer, that their union membership was not known to the president makes it impossible to say that the Examiner's finding is unsupported by substantial evidence. Hence the conclusion that the discharge was discriminatory and in violation of Section 8(a) (3) of the Act cannot be upset.

■ The respondent asserts that the Examiner committed prejudicial error in permitting Chiazzese to testify that DeMeyer told him that Jones threatened to close the plant if a union was organized. If DeMeyer was a supervisor, his repetition of Jones' threat was not excludable as hearsay, as the respondent contends. The Examiner found that DeMeyer was not a supervisor; the Board ruled that he was. This issue did not turn on any question of credibility. There was testimony by both Nania and Jones that DeMeyer had "responsibility to direct" other employees in the coloring room and that his work required "the use of independent judgment." [2] Hence the Board's ruling that he was a supervisor within the meaning of section 2 (11) of the Act, 29 U.S.C.A. § 152(11), appears to us sustainable.[3]

■ Finally it is urged that the Board's conclusion that the inquiries made by foreman Nania to three employees and by foreman Carlson to another concerning membership in the union constituted violations of section 8(a) (1) was erroneous. In the light of the discriminatory discharges already discussed we think such questioning might properly be deemed coercive.[4]

The petition for enforcement is granted.

2. In the coloring room, castings of varying sizes and weights were loaded in barrels and dipped for varying periods of time depending on the type of casting and finish desired. According to Jones, the proper loading of the barrels depended on a good many factors—"It was a matter of experience." Jones rehired DeMeyer because "DeMeyer was more experienced and more intelligent and so forth and carried out my orders. I called DeMeyer back. He was to do the coloring. He was to supervise the loading of the barrels * * *". Foreman Nania testified that DeMeyer "more or less" directed the work in the coloring room, and that he (Nania) had followed DeMeyer's recommendations for pay increases for the men in the coloring room.

3. See Ohio Power Co. v. N. L. R. B., 6 Cir., 176 F.2d 385, 387, 11 A.L.R.2d 243, certiorari denied, 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553. Compare N. L. R. B. v. Arma Corp., 2 Cir., 122 F.2d 153, 156; N. L. R. B. v. Sun Shipbuilding & Dry Dock Co., 3 Cir., 135 F.2d 15, 20.

4. See N. L. R. B. v. Brezner Tanning Co., 1 Cir., 141 F.2d 62; N. L. R. B. v. Alco Feed Mills, 5 Cir., 133 F.2d 419, 421.