## NATIONAL LABOR RELATIONS BOARD.

v.

## SYRACUSE STAMPING CO.

No. 24, Docket 22709.

United States Court of Appeals Second Circuit.

Argued Oct. 14, 1953.

Decided Nov. 10, 1953.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, N. L.R.B., Samuel M. Singer and John Francis Lawless, Washington, D. C., for National Labor Relations Board, Petitioner.

Britcher, Carroll, Williams & Conan, Syracuse, for respondent; Daniel C. Williams, Syracuse, of counsel.

Before L. HAND, SWAN and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a petition for the enforcement of an order of the National Labor Relations Board directed against the respondent, The Syracuse Stamping Company. The Board, in adopting the findings and conclusions of the trial examiner, found that the respondent had violated Sections 8(a)(1) and 8(a)(3) of the Taft Hartley Act, 29 U.S.C.A. § 141 et seq., in interrogating its employees concerning their union activities, threatening and coercing the employees in violation of their rights as secured by Section 7 of the Act, discouraging membership in the International Union, United Automobile, Aircraft and Agricultural Implement Workers, by discriminating in the discharge of an employee, Miss Chilson, and discriminating in the rehiring of one employee, Miss Grosso, because of a pending charge filed by her with the N.L.R.B. The pertinent parts of the Board's decision ordered the respondent to cease and desist from these unfair labor practices and to offer reinstatement to Miss Chilson and Miss Grosso.

We think the findings of the trial examiner, concurred in by the Board, have been sustained by the evi-

dence. In respect to the general violation of Section 8(a)(1), the Board charged that the respondent's vice-president Kuckhoff had at various times made inquiries concerning the activities of the union, and the identity of employees who were in the union; that he had stated that spotters were employed to watch the building in which union meetings were held; and that on one occasion he had made a statement to the effect that: "* * * if he could find out who was joining the Union, who had filed application cards, he was going to make it awfully hard and miserable for us, and any reason he could find he would have us fired * * *." Although Kuckhoff denied these statements, the finding of the Board of their existence was adequately supported by testimony of three employees. The examiner also found that Mr. McNair had asked an employee if she wanted a union shop and had stated further that if the union got in the supervisors and plant members would take away a lot of the privileges then enjoyed by the employees. McNair did not testify but the respondent argues that he was not a supervisory employee within the meaning of the Act. However, the examiner found that in view of his duties of inspecting the workshop and handing out work assignments, he was a supervisory employee under the Act. We agree with this determination. N. L. R. B. v. Chautauqua Hardware Corp., 2 Cir., 192 F.2d 492, 494. It was also found that the foreman John LeCotta had stated to an employee that a union would never succeed in organizing the respondent's plant and if one did "* * * it would cost [the respondent] the last dime they had." The testimony supporting this was not denied. The trial examiner found further that the statement by Superintendent St. Pierre made after inquiries as to whether an employee was in favor of the union to the effect "Well, others had been dismissed from this place and others can be dismissed from this place * * *," was evidence of threats and coercion by the employer. Although the testimony supporting this was conflicting we give support to the trial examiner, particularly where, as here, the issue is one of credibility. It is to be noted that all these instances of coercion took place at the beginning and during an organizational campaign by the union and cannot be viewed as isolated remarks unconnected with union activities.

The next charge was the discriminatory discharge of Miss Chilson in violation of Section 8(a)(3). It is argued that the respondent had just cause for firing Miss Chilson because of her poor absentee record, but the company did not discharge her because of that record even though it might have furnished a sufficient ground. There is ample evidence to support the examiner's finding that the respondent in fact discharged her for her union activities. She was one of the employees who instigated the union's organizational campaign in the respondent's plant and regularly attended its meetings. Her interest in the union was known by the respondent through its vice-president Kuckhoff. Under the circumstances we think the examiner was amply justified in finding that she was discharged because of her union activities. She would ordinarily have been given some prior warning if her discharge was based on her absentee record and the statement by Kuckhoff to her that: "* * * he didn't like people coming into the shop and telling him how they were going to run it, and what they shouldn't do and what they should do" bears out this finding.

The trial examiner and the Board found the respondent guilty of a violation of Section 8(a)(1) in refusing to rehire Miss Grosso because of a pending charge filed by her with the Board that she had been discriminatorily discharged for her union activities. Although the examiner found no merit in the alleged complaint of discriminatory discharge, his finding that its pendency was the respondent's motive for refusing to rehire her is supported by the evidence. In response to Miss Grosso's letter of March

25, 1952, inquiring about employment, the respondent stated in a letter of reply refusing to consider the matter: "If the National Labor Relations Board has been misinformed and it is the fact that you did leave the company's employ voluntarily that of course puts a different complexion on things. If the latter is the case I believe the facts should be conveyed to the National Labor Relations Board, and to the company, and thereafter I am quite sure that the company would reexamine this whole case." Moreover, vice-president Kuckhoff testified when questioned about the refusal to rehire: "I would say that under the circumstances we don't feel that it would be good policy to take Miss Grosso back."

The Board and trial examiner relied on Section 8(a)(1) in finding an unfair labor practice and ordering the reinstatement of Miss Grosso. However, Section 8(a)(1) prevents an interference with those concerted activities which are protected by Section 7. Since the union activities had long since ceased and the refusal to rehire cannot in any way be connected with an interference with concerted activities, we cannot support the Board's order under Section 8(a)(1).

 We do, however, find that there was a violation of Section 8(a)(4) which provides that:

"It shall be an unfair labor practice for an employer—

\*　\*　\*　\*　\*　\*

"(4) To discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this Act".

We agree with the court in John Hancock Mutual Life Insurance Co. v. N. L. R. B., 89 U.S.App.D.C. 261, 191 F.2d 483, that "otherwise discriminate" includes discrimination in regard to the rehiring of an employee. We see no difficulty in varying the grounds of enforcement of this part of the order since the company has raised no objection and has argued the merits of a violation of Section 8(a)(4) before us. True, no charge was pending under Section 8(a)(4) when the examiner reported, and the company was certainly entitled to be heard upon any such new charge after it was filed; but it has not complained on that score, and does not on this appeal ask leave to present any more evidence. Hence, we do not see why we should not proceed on the record as it stands.

 It has been suggested that to force the company to rehire an employee while charges of a discriminatory discharge are pending is unfair because it might act as an admission. But the company can refuse to rehire on any number of valid grounds such as incompetency, no vacancies, etc., and as long as it makes its position clear it will not be in difficulty. We accordingly think there is no validity in the suggested objection.

For the foregoing reasons enforcement of the order of the Examiner and the Board is granted.

SWAN, Circuit Judge (concurring in result).

I concur in the result. On the printed record of testimony I should have found that Miss Chilson was discharged for justifiable cause—repeated and unexcused absences from work. But since the inference as to an employer's motive in discharging an employee must depend largely on the credibility of the witnesses, I do not feel at liberty to set aside the trial examiner's finding, even under the liberalizing rule of the Universal Camera case (Universal Camera Corp. v. N. L. R. B.), 340 U.S. 474, 71 S. Ct. 456, 95 L.Ed. 456.