Marvin POWELL, Brian Holloway, Michael Kenn, Michael Davis, James Lofton, Michael Luckhurst, Dan Marino, George Martin, Steve Jordan and the National Football League Players Association on behalf of themselves and all class members, Plaintiffs,

v.

NATIONAL FOOTBALL LEAGUE, et al., Defendants.

Civ. No. 4-87-917.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 6, 1989.

**960**

Edward M. Glennon, Carol T. Rieger, J. Michael Dady, Luke H. Terhaar and Lindquist & Vennum, Minneapolis, Minn., for plaintiffs.

Laura Besvinick, Bruce W. Greer and Greer, Homer, Cope & Bonner, Miami, Fla., for plaintiff-intervenor.

Paul J. Tagliabue, John H. Schafer, Herbert Dym, Lyle Jeffrey Pash and Covington & Burling, Washington, D.C., for defendants.

## MEMORANDUM AND OPINION

DOTY, District Judge.

Plaintiffs in this action are the National Football League Players Association ("NFLPA"), several professional football players who play for various clubs in the National Football League ("NFL"), and, for purposes of injunctive relief requested against the Right of First Refusal/Compensation System ("RFR/CS") of the 1982 Collective Bargaining Agreement (the "Agreement") and related provisions of the NFL Player Contract, all veteran players who were on the active roster of an NFL club at the beginning of the 1987 football season and all veteran players who are at any time on the active roster of, or under contract to, an NFL club prior to the date of final judgement in this action. Defendants are the National Football League and each of its member clubs.

Plaintiffs commenced this action on October 15, 1987. Plaintiffs' First Amended Class Action Complaint ("Plaintiffs' Complaint") alleges six counts of violations of its rights under the antitrust laws of the United States and two counts of requests for declaratory relief. Counts I and II allege antitrust violations due to implementation by the defendants of the RFR/CS and an agreement not to compete. Counts III and IV allege violations resulting from implementation of the College Player Draft, and Counts V and VI allege violations due to implementation of the NFL Player Contract.[1] Count VII requests the Court to declare that defendants are collaterally estopped from contesting the fact that they have a monopoly in the United States Major League Football Market and Count VIII requests the Court to declare that the "labor exemption" defense is inapplicable to this case.[2]

---

1. The description and background of the "RFR/CS", "NFL Player Contract" and the "Agreement" is set forth in the Court's Opinion dated January 29, 1988. *See Powell v. National Football League*, 678 F.Supp. 777, 779–781 (D.Minn.1988). Also, further facts surrounding the institution of this suit are set forth more fully in that Opinion. The Court reaffirms and incorporates that Opinion into this Opinion by reference.

2. Description of the meaning of the phrase "labor exemption" is also set forth in the Court's January 29, 1988 Opinion. *See* 678 F.Supp. at 782.

In the ensuing fourteen months since this action commenced, the Court has issued two Opinions that have resolved various controlling issues. The first, dated January 29, 1988, determined that the labor exemption does immunize defendants from antitrust liability to a limited extent, thereby disposing of most of Count VIII of Plaintiffs' Complaint. More specifically, the Court adopted a three part standard that the Eighth Circuit Court of Appeals held an employer/defendant must meet in order to be exempt from antitrust liability: the alleged restraint must (1) primarily affect only parties to the collective bargaining relationship, (2) concern a mandatory subject of bargaining, and (3) be the product of good-faith arms length bargaining. The Court applied this standard to the RFR/CS provision of the Agreement and the NFL Player Contract and determined that defendants were exempt from liability arising out of implementation of these alleged restraints up until expiration of the Agreement. The Court also determined that the labor exemption "survived" the Agreement to protect defendants until the parties reached impasse in bargaining over a specific provision of a new agreement. This meant that the allegations contained in Counts I, II, V and VI of plaintiffs' Complaint were partially resolved.

The parties came before the Court again on June 17, 1988 on a motion to determine that the parties were at impasse, and on a motion to preliminarily enjoin defendants from further enforcing the RFR/CS. During the hearing, the Court declared that the parties were at impasse as of that day. In its second Opinion dated July 11, 1988, 690 F.Supp. 812, the Court then denied Plaintiffs' motion for a preliminary injunction.

On October 28, 1988, the parties appeared before the Court a third time to argue four new motions. The motions argued were: (1) defendants' motion for interlocutory appeal of the Court's January 29, 1988 Opinion; (2) defendants motion for summary judgement on Plaintiffs' antitrust allegations with respect to the College Draft (Counts III and IV of Plaintiffs' Complaint) and NFL Player Contract (Counts V and VI); (3) defendants' motion for summary judgement on all pre-June 17, 1988 damage claims; and (4) Plaintiffs' motion for class certification. These matters are now before the Court for resolution and are the subject of this Memorandum and Opinion.

## I. INTERLOCUTORY APPEAL

 Defendants assert that the Court's Opinion filed January 29, 1988 should be certified for appeal pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5(a). Section 1292(b) requires:

> [W]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

Federal Rule of Appellate Procedure 5(a) provides that "an order may be amended to include the prescribed statement at any time...."

The Court finds that its January 29, 1988 Memorandum and Opinion satisfies the requirements of 1292(b). The issue resolved in the January 29th Opinion involved the controlling legal question of whether, and to what extent, the labor exemption protects defendants from antitrust liability. *See Powell v. National Football League*, 678 F.Supp. 777, 782 (D.Minn.1988). There is a substantial ground for difference of opinion on this question, *compare Bridgeman v. National Basketball Association*, 675 F.Supp. 960, 965 (D.N.J.1987) ("the exemption for a particular practice survives only as long as the employer continues to impose that restriction unchanged, and reasonably believes that the practice or a close variant of it will be incorporated in the next Collective Bargaining Agreement.") *with Powell*, 678 F.Supp. at 788 ("a labor exemption ... survives ... until the parties reach impasse ..."), and immediate appeal may materially advance the ultimate termination of this case should the Court of Appeals adopt a different labor exemption

standard than that applied by this Court. Therefore, the Court hereby amends its January 29, 1988 Memorandum and Opinion so as to certify it for appeal.

■ Section 1292(b) also permits the Court, in its discretion, to stay proceedings pending the interlocutory appeal. 28 U.S.C. § 1292(b). The Court declines to do so. The potential harm to plaintiffs in further delaying resolution of its antitrust claims outweighs any benefit that may be gained by awaiting the Court of Appeals' decision. Accordingly, the proceedings in this action shall continue to go forward.

## II. DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants' three motions for summary judgment, in essence, request the Court to extend and enforce the labor exemption standards established in its January 29, 1988 Opinion and its June 17, 1988 finding of impasse.

### A. *College Player Draft*

Defendants assert that the Court's findings with respect to the RFR/CS and NFL Player Contract provisions of the Agreement apply with equal force to the College Player Draft provision of that Agreement. The Court agrees.

### BACKGROUND

The NFL College Draft was instituted in 1936 and has been imposed on rookie players since that time. The Draft gives each NFL club the right, pursuant to certain rules and procedures, to choose specific college or other rookie players with whom the club will have the exclusive NFL negotiating rights. If a rookie player for any reason does not wish to sign a contract with or play for the NFL club which "owns" the rights to him, he may not negotiate with or play for any other NFL club.

In 1977 the NFLPA and NFL Management agreed upon the NFL College Draft in a Collective Bargaining Agreement. In 1982, after a 57–day strike by the NFL players, the NFL College Draft was again agreed upon and became Article XIII of the 1982 Collective Bargaining Agreement. The 1982 Agreement expired in the fall of 1987.

### ANALYSIS

■ Consistent with the mode of analysis utilized in its January 29, 1988 Opinion, the Court begins by addressing the question of whether the labor exemption protects defendants from antitrust liability regarding the NFL College Draft until the point when the 1982 Agreement expired. As with the RFR/CS analysis, the three part *Mackey* test sets the standard to be applied to the College Player Draft. Plaintiffs appear to concede, and the Court so finds, that the College Player Draft was a subject of mandatory bargaining. *See Zimmerman v. National Football League*, 632 F.Supp. 398, 404 (D.D.C.1986) (the parties agreed that the 1984 NFL supplemental draft was a mandatory subject of bargaining and the Court so held); *Wood v. National Basketball Ass'n*, 602 F.Supp. 525, 528 (S.D.N.Y.1984), *aff'd Wood v. National Basketball Ass'n*, 809 F.2d 954 (2nd Cir.1987) (the Court held that the college draft involved a mandatory subject of bargaining). Plaintiffs contend, however, that the College Player Draft provision of the Agreement affects some plaintiffs (namely those pre-draftees not members of the bargaining unit because not yet members of the NFL) not parties to the Agreement. Plaintiffs also contend that the provision was not the result of good faith arms length bargaining.

Contrary to plaintiffs' first contention, the Court finds as a matter of law that the College Draft provision of the Agreement does not affect plaintiffs not parties to the Agreement. In a case similar to this one involving antitrust challenges to the National Basketball Association's draft, Judge Carter, United States District Court Judge for the Southern District of New York, ruled on this same contention. After pointing out that the plaintiffs cited no authority for their contention, he stated: "plaintiff's principle would turn federal labor policy on its head." *Wood v. National Basketball Ass'n*, 602 F.Supp. 525, 529 (S.D.N.

Y.1984). He then held that "[a]t the time an agreement is signed between the owners and the players' exclusive bargaining representative, all players within the bargaining unit and those who enter the bargaining unit during the life of the agreement are bound by its terms." *Id.* In support of this holding, Judge Carter cited to and quoted from the Supreme Court case *J.I. Case Co. v. Labor Board,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944). In *J.I. Case Co.* the Supreme Court stated that when an employee is hired after a collective bargaining agreement has been made, "the terms of [his] employment already have been traded out." *Id.* at 335, 64 S.Ct. at 579. Judge Carter also cited with authority a Fifth Circuit Court of Appeals decision which held that "a union may legitimately bargain over wages and conditions of employment which will affect employees who are to be hired in the future." *See NLRB v. Laney & Duke Storage Warehouse Co.,* 369 F.2d 859, 866 (5th Cir.1966).

The Second Circuit Court of Appeals recently affirmed Judge Carter's ruling:

> Finally, [plaintiff] argues that the draft and salary cap are illegal because they affect employees outside the bargaining unit. However, that is also a commonplace consequence of collective agreements. Seniority clauses may thus prevent outsiders from bidding for particular jobs, and other provisions may regulate the allocation or subcontracting of work to other groups of workers. *See Fibreboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 210–15, 85 S.Ct. 398, 402–05, 13 L.Ed.2d 233 (1964). Indeed the National Labor Relations Act explicitly defines "employee" in a way that includes workers outside the bargaining unit. 29 U.S.C. § 152(3).[3]

> If [plaintiff's] antitrust claim were to succeed, all of these commonplace arrangements would be subject to similar challenges, and federal labor policy would essentially collapse unless a wholly unprincipled, judge-made exception were created for professional athletes. Employers would have no assurance that they could enter into any collective agreement without exposing themselves to an action for treble damages. Moreover, recognition of a right to individual bargaining without the consent of the exclusive representative would undermine the status and effectiveness of the exclusive representative, and result in individual contracts that reduce the amount of wages or other benefits available for other workers.

*Wood v. National Basketball Ass'n,* 809 F.2d 954, 961 (2nd Cir.1987). Both Judge Carter's and the Second Circuit's reasoning applies with equal force to the instant case. Even though some of the plaintiffs were not yet members of the collective bargaining unit when some of their rights were negotiated, fundamental principles of labor law require them to be bound by terms previously "traded out."[4] *See also Merk v. Jewel Companies, Inc.,* 848 F.2d 761, 764 (7th Cir.1988) (stating that a "union employer ... may agree that employees hired in the future (who by definition are not yet members of the bargaining unit) will receive lower pay."); *Zimmerman v. National Football League,* 632 F.Supp. 398, 405 (D.D.C.1986) ("not only present but potential future players for a profes-

---

**3.** The definition provides, in pertinent part, that "[t]he term 'employee' shall include any employee, *and shall not be limited to the employees of a particular employer,* unless this subchapter explicitly states otherwise." 29 U.S.C. § 152(3) (emphasis added). *See also Reliance Ins. Cos. v. NLRB,* 415 F.2d 1, 6 (8th Cir.1969) (job applicants are "employees" within mean of 29 U.S.C. § 152(3); *Time–O–Matic, Inc. v. NLRB,* 264 F.2d 96, 99 (7th Cir.1959) (same); *John Hancock Mut. Life Ins. Co. v. NLRB,* 191 F.2d 483, 485 (D.C.Cir. 1951).

**4.** The Court is not persuaded by plaintiffs' attempt to distinguish the two *Wood* decisions on the grounds that the NFLPA certification expressly excludes from membership "all potential players whether under contract or not who have not reported for the first time to the official preseason training camp". (Berthelsen Affidavit, Exh. A, at p. 2). The contention that the draft is illegal because it affects employees outside the bargaining unit is no different from the contention considered in *Wood. See Wood,* 809 F.2d at 960 ("[plaintiff] argues that the draft ... [is] illegal because [it] affect[s] employees *outside* the bargaining unit") (emphasis added).

sional sports league are parties to the bargaining relationship"). Therefore, the Court holds that the first part of the *Mackey* test is also met.

The Court also finds that the College Draft provision of the Agreement was the result of good faith arms length bargaining. In its January 29, 1988 Opinion finding that the RFR/CS and NFL Player Contract provisions of the Agreement were the product of bona fide bargaining, the Court identified the following facts as persuasive:

> the player restraints complained of are specifically contained in the 1982 Collective Bargaining Agreement signed by both the NFLPA and the NFL Management Council; the Preamble to the Agreement recites that the provisions therein are "the product of bona fide, arm's length collective bargaining," the Agreement contains a "no-suit" provision; plaintiffs did not challenge the legality of the player restraints or the "no-suit" provision during the existence of the Agreement; and the total package of employee benefits obtained by the NFLPA exceeded $1.2 billion, at least some of which, presumably, was relinquished in consideration for the system of player restraints contained in the Agreement.

*Powell,* 678 F.Supp. at 784. Each of these facts also applies to the College Draft provision of the Agreement. Based upon these facts, the Court finds that no reasonable juror could conclude that the College Draft provision of the Agreement was anything other than the result of good faith arms length bargaining. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"). Therefore, summary judgment on this issue is appropriate.

Since all three parts of the *Mackey* test have been satisfied with respect to the question of whether defendants are exempt from antitrust claims on the College Draft provision up until expiration of the Agreement, the Court grants defendants' motion for summary judgment to the extent that it requests the Court to declare that the labor exemption protects them during the term of that Agreement.

The Court has already determined that the labor exemption survives expiration of the Agreement until the point at which the parties reach impasse on the provision in question. Neither plaintiffs nor defendants have requested the Court to make a finding as to impasse on the College Draft provision of the Agreement. Accordingly, the Court need not address the survival issue on the College Draft provision at this time.

■ Plaintiffs assert summary judgment is inappropriate at this time because they have been unable to obtain sufficient discovery in order to oppose a finding of good faith arm's length bargaining with respect to the College Draft provision of the Agreement. In addressing this assertion, the Court notes at the outset that it has limited its holding to a finding that the College Draft provision was valid up until expiration of the Agreement, and refrains from extending it to 1992 as requested by defendants.

Upon request of a party and submission of a supporting affidavit, the Court is permitted to refrain from ruling on a motion for summary judgment pursuant to Fed.R. Civ.P. 56(f) until such time as adequate discovery has been accomplished. Rule 56(f) provides that a court "may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." While antitrust litigation is peculiarly amenable to the granting of a continuance since it involves so many subjective issues, *see Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), "there may be [antitrust] cases where summary judgment is eminently appropriate even prior to discovery." *Willmar Poultry Co. v. Morton–Norwich Products, Inc.,* 520 F.2d 289, 298 (8th Cir.1975). Thus, the Eighth Circuit has declared:

> Rule 56(f) is not a shield that can be raised to block a motion for summary

judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party evoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits ... and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.

*Id.*

Plaintiffs have submitted an affidavit which states that "discovery would produce information confirming the plaintiffs' position that the NFL defendants had a far superior bargaining position during the negotiations for the 1982 Collective Bargaining Agreement." (Affidavit of Carol T. Reiger at 5). Plaintiffs fail, however, to point to any facts which defendants may exclusively possess which contravene the abundant evidence of good faith bargaining apparent on the face of the Agreement itself. The Court will not permit Rule 56(f) to be used as a delay of the inevitable. Therefore, plaintiffs' request for a continuance pursuant to Rule 56(f) is denied as to defendants' motion regarding the College Draft.

### B. *NFL Player Contract*

■ Defendants move for summary judgment of all of plaintiff's claims regarding the NFL Player Contract. The Court has already determined that the NFL Player Contract is exempt from antitrust attack until after the parties reach impasse in negotiations on this issue. *See Powell v. National Football League,* 678 F.Supp. 777, 778, 783–784 (D.Minn.1988). In line with this determination, defendants assert that the Court should grant them summary judgment on *all* of plaintiffs' claims respecting the NFL Player Contract on the ground that impasse can never be reached on this issue because plaintiffs and defendants have already agreed to inclusion of the Agreement's NFL Player Contract provision in a new agreement by initialing the language of that provision during negotiations in the fall of 1987. Plaintiffs dispute the significance of its initialing and assert

that any such initialing was merely "tentative". In the alternative, plaintiffs request the Court to permit it more time to conduct discovery on the circumstances surrounding and significance of the purported new agreement.

The Court finds that to date impasse has not been reached on the NFL Player Contract issue. The Court, however, agrees to permit plaintiffs more time to conduct discovery. Therefore, defendants' motion for summary judgment on *all* of plaintiffs' claims regarding the NFL Player Contract is not granted, but will be considered after plaintiffs have had reasonable time to conduct discovery and defendants renew their motion.

### C. *RFR/CS Damages to June 17, 1988*

■ Defendants request the Court to dismiss all of plaintiffs' claims for antitrust damages regarding the RFR/CS provision of the Agreement before June 17, 1988 because until that date they were protected from such claims by the labor exemption. This request merely asks the Court to confirm and enforce its prior rulings.

On January 29, 1988, the Court held that defendants were protected from antitrust allegations on the RFR/CS and the NFL Player Contract provisions of the Agreement until the point at which the parties reached impasse on those issues in attempts to formulate a new agreement. Plaintiffs brought a motion requesting the Court to declare that the parties were at impasse which was set for hearing on June 17, 1988. During the hearing, the Court declared as a matter of law that the parties were at impasse as of that day. *See* Transcript of Proceedings at pp. 113–116, *Powell v. National Football League* (No. 4–87–917) (D.Minn. June 17, 1988) (on file) ("the impasse issue is *now* ripe for decision, this Court believes. * * * [B]ased on the record as *presently* constituted, the Court finds that the parties are at impasse over the free agency issue.") (emphasis added).

Since the Court found that defendants were protected from plaintiffs' antitrust allegations up until the point of impasse, and

since impasse was not found until June 17, 1988, plaintiffs' claims for antitrust damages regarding the RFR/CS before that date are without merit. Accordingly, the Court grants defendants' motion for summary judgment on all pre-June 17, 1988 damage claims respecting the RFR/CS provision of the 1982 Collective Bargaining Agreement.

## III. CLASS CERTIFICATION

■ Upon stipulation of the parties, the Court has already certified in this case, for purposes of injunctive relief requested against continued application of the RFR/CS provision of the Agreement and related provisions of the NFL Player Contract, under Fed.R.Civ.P. 23(b)(2) a class composed of:

> all veteran players who were on the active roster of a National Football League (NFL) club at the beginning of the 1987 NFL football season, and all veteran players who are at any time on the active roster of, or under contract to, an NFL club prior to the date of a final judgment in this action.

(Findings and Order for Certification, No. 4-87-917 (D.Minn. June 17, 1988)). Plaintiffs now move the Court for an Order extending this certification to include the following:

> (1) A subclass with respect to damages arising from restraints on veteran player movement, comprised of all players under contract to play professional football in the NFL during the relevant statute of limitations period, including all players who will enter into an NFL player contract prior to the date of final judgment in this action;
> (2) A subclass with respect to the college draft, both as to damages and injunctive relief, comprised of all players selected in a college draft during the relevant statute of limitations period, including all players who will be drafted by an NFL club prior to the final judgment in this action; and
> (3) An additional request for injunctive relief (to be added to the injunctive relief already requested in the June 17, 1988

class certification Order) against the NFL defendant's alleged monopolization and abuse of monopoly power in connection with the specific practices alleged by plaintiffs in their Complaint.

Federal Rules of Civil Procedure 23 and 23.2 contain the standards which govern the Court's determination of whether the requested class certification is appropriate. Two implicit and four explicit requirements of Rule 23(a) must be satisfied, as well as at least one of three separate provisions of Rule 23(b). For implicit requirements of Rule 23(a), the Court must find (1) the existence of a precisely defined class and (2) that the class representatives are members of the proposed class. *Dirks v. Clayton Brokerage Co.*, 105 F.R.D. 125, 130 (D.Minn.1985).

For explicit requirements the Court must find:

> 1. The class is so numerous that joinder of all members is impracticable;
> 2. There are questions of law or fact common to the class;
> 3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> 4. The representative parties will fairly and adequately protect the interests of the class.

Two of the three Rule 23(b) requirements relevant to this case, one of which the Court must find satisfied, are that:

> (1) the prosecution of separate action against individual members of the class would create a risk of either:
> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> (B) adjudications with respect to individual members of the class which would, as a practical matter, be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and
> (3) ...the questions of law or fact common to the members of the class predom-

inate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(1) and (3) respectively.

Plaintiffs and defendants dispute the current state of plaintiffs' Complaint. Plaintiffs assert that their Complaint alleges illegal concerted activity on the part of defendants outside of the context of the Agreement. In other words, plaintiffs urge the Court to interpret their Complaint broadly to allege that defendants have engaged in an abuse of monopoly power in a manner beyond that contemplated by the RFR/CS, College Draft or NFL Player Contract provisions of the Agreement.

Defendants argue plaintiffs' Complaint is not entitled to such a broad interpretation. Instead, in defendants' view, plaintiffs are merely attempting to sidestep the Court's prior Opinions which hold that defendants are exempt from plaintiffs' antitrust allegations until the parties reach impasse. Resolution of this issue will control the Court's findings with respect to plaintiffs' class certification motion.

In interpreting the sufficiency of allegations in a Complaint, the standard to be applied is that found in Fed.R.Civ.P. 8(a). Rule 8(a) requires the allegations of a complaint to be "a short and plain statement of the claim showing that the pleader is entitled to relief". The objective is to give the opposing party fair notice of the type of litigation involved. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1215 (1969); *see Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 390 (8th Cir.1968) ("clear purpose of the Rule is to give notice to the other party and not to formulate issues or fully summarize the facts involved.").

Although plaintiffs' 48 page Complaint needs to be considered as a whole for proper interpretation, the most pertinent allegations, as emphasized by the Court, follow:

50. Each player in the class is or will be subject to uniform agreements, rules, regulations, and practices among the NFL defendants *including, but not limited to*, those known collectively as the Right of First Refusal/Compensation, the College Draft, and the NFL Player Contract, which are or will be uniformly imposed by the NFL defendants.

\* \* \* \* \* \*

61. Professional team sports athletes in the United States are generally represented by labor organizations, such as the Players Association, which enter into collective bargaining agreements with the clubs in professional sports leagues to set and establish league-wide benefits such as pensions, severance payments, minimum salaries and grievance procedures. Players in all of the major professional team sports leagues, however, play for their particular clubs pursuant to individual player contracts. Thus, each player in the NFL individually negotiates his salary and other compensation with the particular NFL club that employs him, subject to the restraints imposed by the NFL defendants. Since the beginning of the League, the NFL clubs, by a continuous course of conduct, have and continue to this day to *act in concert in various ways, not all of which are known to plaintiffs; among other things*, the NFL defendants have, by combining and conspiring, jointly adopted and imposed rules and policies with the purpose and effect of restraining or eliminating competition for individual players' services in order to depress players' salaries and deprive players of their freedom of movement.

\* \* \* \* \* \*

73. Since 1977, the Right of Refusal/Compensation system has had the purpose and effect of restraining or eliminating competition for professional football players' services. *The system has been enforced by a group boycott and agreement among the NFL defendants in the form of a concerted refusal to deal with NFL players except through*

*restrictive anticompetitive practices.*[5]

\* \* \* \* \* \*

85. In sum, the NFL today employs three principal restraints for suppressing competition for players' services: (1) the Right of First Refusal/Compensation system; (2) the College Draft; and (3) the NFL Player Contract. If these restraints would in any way have been protected from antitrust scrutiny in the past because of their inclusion, in some form, as part of an existing collective bargaining agreement between the NFL defendants and the Players Association, any such protection was removed even during the existence of an agreement because the NFL defendants refused to act in good faith in entering into *and implementing* the provisions of the 1977 and the 1982 Collective Bargaining Agreements *and have abused their monopoly power in violation of the antitrust laws.*

Each of these paragraphs were incorporated into the six counts of plaintiffs' Complaint. Other pertinent paragraphs include 87, 92, 94, 98, 103, 104, 108, 120, 134 and 144. Significantly, paragraph 144 provides in part:

> "to the extent that the NFL defendants claim that any provision survives the expiration of the 1982 Agreement, the labor exemption is not available to the NFL defendants because the provisions at issue in this lawsuit were not the product of bona fide arms-length bargaining, *and because defendants, by failing to act in good faith in imposing and implementing those provisions, have abused their monopoly power.*"

The Court finds that plaintiffs' Complaint sufficiently alleges concerted activity on the part of defendants, in addition to that agreed upon in the Agreement, so as to satisfy Rule 8(a). Plaintiffs' Complaint alleges that the class is or will be subject to uniform agreements "including, but not limited to" the RFR/CS, Draft, and Player Contract provisions of the Agreement.

Par. 50. It also alleges that defendants have acted in concert in "various ways, not all of which are known to plaintiffs; among other things" conspiracy to adopt and impose rules with the purpose and effect of depressing salaries and restraining player movement and that "the [restraints have] been enforced by a group boycott and agreement among the NFL defendants in the form of a concerted refusal to deal with NFL players except through restrictive anticompetitive practices." Para(s). 61, 73, 77, and 83. It further alleges that the labor exemption does not protect defendants from all of their activities because "in implementing the provisions", they have "abused their monopoly power." Para. 144. These provisions are sufficient to put defendants on notice that plaintiffs' claims are not limited to the provisions of the Agreement. Accordingly, plaintiffs' motion for class certification must be interpreted in that light.

Defendants argue that even if plaintiffs' Complaint can be read to allege concerted activity not agreed upon in the Agreement, the Agreement requires such a claim to be arbitrated, or, if not that, the claim must be presented as one for breach of contract under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982). These arguments request the Court to address the merits of plaintiffs' Complaint, which the Court cannot do on this motion of plaintiff to certify a class. *See Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Defendants arguments should more properly be made on a motion for summary judgment. The Court can always change a class certification to reflect any further developments in a case. *See* Fed. R.Civ.P. 23(c)(1).

Considering plaintiffs' motion for class certification in the light of this broad interpretation of plaintiffs' Complaint, the Court makes the following findings:

1. The proposed subclasses are precisely defined ("all players under contract to

---

**5.** This same language, except that it is tailored to the NFL College Draft and Player Contract, is used in paragraphs 77 and 83.

play professional football in the NFL during the relevant statute of limitations period", for the first subclass, and "all players selected in a College Draft during the relevant statute of limitations period", for the second subclass) and the class representatives are members of the proposed class.

2. The proposed members of the subclasses are so numerous that joinder of all members is impractical. Fed.R.Civ.P. 23(a)(1).

3. There are questions of law or fact common to the subclasses. Fed.R.Civ.P. 23(a)(2); *see Alexander v. National Football League,* 1977–2 Trade Cas. (CCH) par. 61,730, 72,989, 1977 WL 1497 (D.Minn.1977), *aff'd sub nom., Reynolds v. National Football League,* 584 F.2d 280 (8th Cir.1978); *Robertson v. National Basketball Association,* 389 F.Supp. 867, 896–897 (S.D.N.Y. 1975), *aff'd, Robertson v. National Basketball Association,* 556 F.2d 682 (2nd Cir. 1977).

4. The claims of the named plaintiffs are typical of the claims of the subclasses and the named plaintiffs will fairly and adequately protect the interests of the subclasses. Fed.R.Civ.P. 23(a)(3) and (4); *see Alexander* at 79, 990; *Robertson* 389 F.Supp. at 898–900.

5. The prosecution of separate actions by individual members of the subclasses would create a risk of inconsistent or varying adjudications with respect to individual members of the subclasses which would establish incompatible standards of conduct for the defendants. Fed.R.Civ.P. 23(b)(1)(A). *See Reynolds v. National Football League,* 584 F.2d 280, 283–284 (8th Cir.1978). Absent subclass certification, it is likely that other subclass members would file similar suits in other courts. "One such court might grant injunctive relief, a second might refuse such relief and a third court might give injunctive relief which materially differs from that given by the first court." *Alexander* at 72, 991 (quoting *Robertson* 389 F.Supp. at 901).

6. The prosecution of separate actions by individual subclass members would create the risk of adjudications with respect to individual subclass members which would as a practical matter be dispositive of the interests of other members not parties to such adjudications and substantially impair their ability to protect their interests. Fed. R.Civ.P. 23(b)(1)(B); *Reynolds* at 284; *Alexander* at 72, 991; *Robertson* 389 F.Supp. at 901.

7. Although these subclasses would appear to qualify for certification under Fed. R.Civ.P. 23(b)(3) as well as under Fed.R. Civ.P. 23(b)(1), when a choice exists between (b)(1) and (b)(3) certification, the Court should order that the action proceed under (b)(1) exclusively, when to do so will avoid the inconsistent adjudication or compromise of class interests that might otherwise occur. *Reynolds* at 284; *Robertson v. National Basketball Association,* 556 F.2d 682, 685 (2nd Cir.1977).

Based upon these findings, the Court conditionally grants plaintiffs' motion for class certification with respect to the two requested subclasses.

The Court also conditionally grants plaintiffs' motion for a determination that its prior certification with respect to injunctive and declaratory relief may be extended to include plaintiffs' allegations with respect to the defendants' monopolization and abuse of monopoly power.

## IV. CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motion for interlocutory appeal of the Court's January 29, 1988 Memorandum and Opinion is granted.

2. Defendants' motion for summary judgment on the NFL College Draft is granted to the extent that it requests the Court to hold that defendants are protected by the labor exemption until the parties reach impasse.

3. Defendants' motion for summary judgment on the NFL Player Contract is not granted at this time.

4. Defendants' motion for summary judgment on all pre-June 17, 1988 damage claims with respect to the Right of First

Refusal/Compensation System of the 1982 Collective Bargaining Agreement is granted.

5. Plaintiffs' motion for class certification is conditionally granted. Thus, the Court conditionally extends its prior certification Order to include the following:

(1) A subclass with respect to damages arising from restraints on veteran player movement, comprised of all players under contract to play professional football in the NFL during the relevant statute of limitations period, including all players who will enter into an NFL player contract prior to the date of final judgment in this action;

(2) A subclass with respect to the college draft, both as to damages and injunctive relief, comprised of all players selected in a college draft during the relevant statute of limitations period, including all players who will be drafted by an NFL club prior to the final judgment in this action; and

(3) An additional request for injunctive relief (to be added to the injunctive relief already requested in the June 17, 1988 class certification Order) against the NFL defendant's alleged monopolization and abuse of monopoly power in connection with the specific practices alleged by plaintiffs in their Complaint.