**WHITE MOTOR CORPORATION and White Farm Equipment Company, Appellees,**

v.

**E. I. MALONE, Commissioner of Labor and Industry for the State of Minnesota, Appellant.**

No. 78–1893.

United States Court of Appeals, Eighth Circuit.

Submitted May 15, 1979.

Decided June 5, 1979.

Richard B. Allyn, Sol. Gen., St. Paul, Minn. (argued), Warren R. Spannaus, Atty. Gen., Kent G. Harbison and Richard A. Lockridge, Sp. Asst. Attys. Gen., St. Paul, Minn., on brief, for appellant.

Frank C. Heath of Jones, Day, Reavis & Pogue, Cleveland, Ohio (argued), John L. Strauch, James A. Rydzel, Cleveland, Ohio, and Curtis L. Roy and Peter S. Hendrixson of Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., on brief, for appellees.

Ellen B. Kaplan, Gail L. Perlman and Anne M. Cohen, Law Student, of Kaplan & Perlman, Springfield, Mass., on brief, for amicus curiae, Greater Springfield Gray Panthers Corp.

Before BRIGHT, HENLEY and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

The defendant, E. I. Malone, Commissioner of Labor and Industry for the State of Minnesota, appeals from a summary judgment entered by the United States District Court for the District of Minnesota (The Honorable Donald D. Alsop, District Judge) holding that the Minnesota Private Pension Benefits Protection Act (hereinafter generally called the Act), 1974 Minn. Laws, c. 437, Minn.Stat.Ann. §§ 181B.01–.17, is unconstitutional, at least as applied to plaintiffs White Motor Corporation and its subsidiary White Farm Equipment Company.

The controversy arose after the Act became effective in 1974 and after the plaintiffs had announced the termination of a pension plan or pension plans for the benefit of Minnesota employees of White Farm Equipment Company. The Commissioner took the position that the Act should be applied to the plaintiffs, and that a large "funding charge" should be imposed upon them or at least upon the implement company for the purpose of protecting the vested pension rights of retirees and other employees of the implement company.[1]

On the strength of the decision of the Supreme Court in *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978), the district court held that the Act as applied to the plaintiffs was violative of the contracts clause of the Constitution of the United States,[2] and that plaintiffs were entitled to summary judgment on that basis. The ruling of the district court did not dispose of all of the issues in the case; however, as provided by Fed.R.Civ.P. 54(b), the district court ordered that judgment be entered immediately. That was done, and this appeal followed.

We affirm the judgment of the district court.

I.

From the plaintiffs' standpoint the controlling pleading in the case is plaintiffs' Amended Complaint. In that pleading the plaintiffs alleged that the Act, as applied to them, violated the supremacy clause of the Constitution, Article VI, Clause 2, in that the subject matter of the Act had been preempted by federal law, notably the National Labor Relations Act, 29 U.S.C. § 151 et seq., that it violated the contracts clause that has been cited, that it violated the commerce clause, Article I, § 8, Clause 3, that it violated the due process and equal protection clauses of the fourteenth amend-

---

1. The Minnesota statute has now become obsolete by its own terms having been superseded by the federal Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. However, the superseding of the Act by the federal statute has no significance as far as this case is concerned. See Fleck v. Spannaus, 251 N.W.2d 334 (Minn.1977), which was decid-

ed upon a certification of questions by a three judge federal district court in Minnesota, Fleck v. Spannaus, 421 F.Supp. 20 (D.Minn.1976).

2. Article I, § 10, Clause 1 provides in part that no State shall pass any law impairing the obligation of contracts.

ment to the Constitution, and that it also violated three provisions of the Constitution of Minnesota. Federal subject matter jurisdiction is not questioned and is established.

The Amended Complaint is drawn in eight counts. The first five counts allege, respectively, violations of separate federal constitutional provisions; the last three counts allege violations of the Minnesota Constitution. Count I is the preemption claim; Count II is the contracts clause claim. The other claims are not important at the moment. The Commissioner answered and denied that there was merit to any of the claims of the plaintiffs. Additionally, the Commissioner asked the district court to abstain from action in this case until the Act should be evaluated and construed by the Minnesota Supreme Court.[3]

## II.

It is now necessary to leave this case temporarily and go to a similar case that was filed in the district court shortly after this case was filed and which was also assigned to the docket of Judge Alsop. That case, which was docketed as D. Minn. No. 3–75 Civ. 178, was filed by a number of plaintiffs including Walter J. Fleck and his employer, Allied Structural Steel Company, against Warren Spannaus, Attorney General, and other defendants including Commissioner Malone. In that case, as in this one, the plaintiffs claimed that the Act violated the contracts clause, the commerce clause, and the equal protection and due process clauses of the Constitution, including the fourteenth amendment. It was also claimed, as here, that the subject matter of the Act had been preempted by federal legislation.

In the *Fleck* case, the plaintiffs sought injunctive relief on the basis of all of their constitutional claims. To the extent that an injunction was sought on the basis of the preemption claim, no statutory three judge court was required, but as to the other claims, as the law then stood, a three judge court had to be convened. *See* 28 U.S.C. § 2281, repealed by Act of August 12, 1976, P.L. 94–381, § 1, 90 Stat. 1119. The plaintiffs moved for summary judgment or, alternatively, for a preliminary injunction.

Sitting as a single judge, Judge Alsop refused to abstain and held that the preemption claim was without merit. As to the other claims he asked that a statutory court be convened. *Fleck v. Spannaus*, 412 F.Supp. 366 (D. Minn.1976). Such a court was convened and it consisted of Circuit Judge Heaney, Chief District Judge Devitt of Minnesota and Judge Alsop.

The three judge court held that there was no merit to any of the constitutional claims of the plaintiffs and dismissed the complaint. *Fleck v. Spannaus*, 449 F.Supp. 644 (D. Minn.1977). In an earlier decision, *Fleck v. Spannaus*, 421 F.Supp. 20 (D. Minn. 1976), the three judge court had dismissed the individual claims of Fleck and others; that left the controversy essentially as one between Allied Structural Steel Company and the Commissioner and other state officials.

Allied sought and obtained review by the Supreme Court, and that Court held that, at least as applied to Allied, the Act violated the contracts clause. The decision of the district court was reversed. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

## III.

Returning now to the case at bar, we observe at the outset that plaintiffs here, unlike those in *Fleck*, caused their pleadings to be so drawn as to avoid any necessity for the convening of a statutory court. Basically, they sought declaratory relief only, there being no prayer for a permanent injunction.

The case having come to issue plaintiffs moved for a summary judgment on the preemption claim only and alternatively for

---

**3.** Judge Alsop declined to abstain, and the propriety of his refusal is not a question presented by this appeal. We will say, however, perhaps gratuitously, that we feel that his action was proper.

a preliminary injunction based solely on that claim.[4] Again refusing to abstain, the district judge rejected the preemption claim and denied the motion for summary judgment or for a preliminary injunction. *White Motor Corp. v. Malone*, 412 F.Supp. 372 (D. Minn.1976).

Since the order denied the motion for preliminary injunction, the district court's order was appealable, 28 U.S.C. § 1292(a), and the plaintiffs appealed. This court reversed the district court. *White Motor Corp. v. Malone*, 545 F.2d 599 (8th Cir. 1976). At the behest of the Commissioner, the Supreme Court granted review and reversed this court. *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978).

That decision was handed down on April 3, 1978, and the decision in *Allied, supra*, was handed down on June 28, 1978. Thereafter the plaintiffs moved for summary judgment based on the contracts clause, and their motion was granted. Due to the act of the district court in giving the Commissioner an appealable order under Rule 54(b), this appeal was taken.[5]

IV.

Due to the obvious relation of this case to the *Allied* case, *supra*, it has been necessary to state the procedural history of both cases in considerable detail. We now turn to the substantive facts of this case, many of which are not in serious dispute.

White Farm Equipment Company (hereinafter simply White) is a manufacturer of farm implements and for many years White and a predecessor corporation operated two manufacturing plants in Minnesota, one at Hopkins, and a smaller plant on Lake Street in Minneapolis. White's parent corporation, White Motor Corporation, is engaged in the manufacture and sale of the White line of motor trucks and parts therefor. Both of the corporations are engaged in commerce or in operations that substantially affect interstate commerce, and both are unquestionably "employers" within the meaning of the National Labor Relations Act.

Employees at White's two plants have been represented historically by local unions of the International Union of Automobile, Aerospace and Agricultural Implement Workers of America, commonly referred to as UAW.

Prior to 1972 White had maintained an employee pension plan that was funded by contributions from White. Under that plan White employees were entitled to retire on pensions upon reaching a certain age, and pension rights of an employee might vest prior to retirement if certain conditions were met. However, White had no personal obligations under the plan beyond the assets of the pension fund, and White had certain termination rights. It appears that the plan was adequately financed to meet current obligations as long as White maintained the fund and continued to make contributions, but that the plan would be inadequately financed if for any reason the plan should be terminated.

Through the years the pension plan was renewed periodically as was the collective bargaining agreement between White and UAW. The plan and the collective bargaining agreements were evidenced by separate documents.[6]

---

4. As may be noted, this limited prayer for injunctive relief did not call for a three judge court.

5. The plaintiffs have chosen and to some extent have been permitted to put forward their contentions piecemeal. The district court has never passed on the claims based on the commerce clause, the due process clause, or the equal protection clause within the framework of this case, nor has it passed upon the claims based on the Minnesota Constitution. A reversal of the district court in this case might not end this

litigation, and there might be further appeals to this court and perhaps even further reviews by the Supreme Court. Judicial efficiency and economy of time and effort are hardly promoted by the procedural course that has been followed.

6. We shall have occasion presently to mention in text the holding of this court in *International Union v. White Motor Corp.*, 505 F.2d 1193 (8th Cir. 1974). In our opinion in that case we had occasion to describe in some detail the termination provisions appearing in the respective doc-

With affairs in that posture, White announced in 1972 the imminent closure of both of its Minnesota plants and the discontinuance of the pension plan.[7] The Union objected to termination of the plan as of that time and took the matter to arbitration.

The collective bargaining agreement then in effect between White and the Union expired on May 1, 1974, and the arbitrator held that White had no right to terminate the plan prior to that date. White refused to accept that decision but out of precaution made a second announcement of termination effective as of May 1, 1974.

When White refused to accept the arbitrator's award, the Union filed suit in the district court (District Judge Earl R. Larson) to enforce arbitration and prevailed. White (including the parent corporation) appealed, and we affirmed the district court. *International Union v. White Motor Corp.*, 505 F.2d 1193 (8th Cir. 1974).

The Act here in controversy became effective on April 10, 1974. The provisions of the Act have been set out in detail in earlier opinions published in this case and in the *Allied* case, *supra*. Suffice it for present purposes to say that if a business enterprise in Minnesota that had an employee pension plan during the effective life of the Act ceased to do business in Minnesota or discontinued the plan, and if the plan was inadequately funded to meet retirement requirements of employees with at least ten years service with the enterprise, the business was required to pay over to the State agency a "funding charge" sufficient to make up the deficit. The Commissioner determined initially the amount of the charge, but the employer was entitled to administrative and perhaps later judicial review.

In view of the holding of the arbitrator, later upheld by this court, White's pension plan was at least arguably in force when the Minnesota statute became effective. Apparently after we decided the arbitration

controversy, the Commissioner advised White and its parent corporation that he was going to impose a large funding charge as provided by the Act. Plaintiffs were advised at the same time of their administrative remedies. However, it seems that the parties may have agreed that during the pendency of this litigation the Commissioner will not try to enforce his assessment and that plaintiffs will not seek administrative relief.

## V.

As we have seen, the Supreme Court in *Allied Structural Steel Co., supra*, reversed our holding in *Fleck, supra*. We think that the holding of the majority of the Court in *Allied* can fairly be summarized as follows:

While the prohibition of the contracts clause is absolute on its face, it has never been given a literal construction. In the legitimate exercise of its police power a State may "impair" by "altering" the terms of a private contract, and the legislative action may either lighten or increase the obligations of the contractual obligor.

However, the contracts clause is a viable restriction of the powers of the States, and if a State undertakes to alter substantially the terms of a contract, it must justify the alteration, and the burden that is on the State varies directly with the substantiality of the alteration. A serious alteration of the terms of a contract resulting from state legislation is permissible if, but only if, the legislation is necessary to meet a broad and pressing social or economic need, if the legislation is reasonably adapted to the solution of the problem involved, and if it is not overbroad or over harsh.

In *Allied* the Supreme Court held that the Minnesota Act did not pass constitutional muster when challenged on contracts impairment grounds. The Court did not think that the Act addressed itself to any broad

uments and the relationship between the two sets of documents. We will not repeat those descriptions here.

7. The Lake Street plant was closed. The Hopkins plant was not.

or imperative problems such as those that arose in the depression of the thirties. The Court pointed out that the Act applied only to a limited class of employers and only to certain specific situations, and that it was also subject to certain other constitutional objections that might be raised under the contracts clause.

## VI.

In support of the motion for summary judgment that the district court granted ultimately, plaintiffs contended that this case was indistinguishable in principle from *Allied*, and that *Allied* mandated upholding of plaintiffs' contracts clause contention. The Commissioner contended that the two cases are distinguishable and that *Allied* should not be followed in this case.

The parties make essentially the same contentions here.[8]

In a full but unpublished opinion, Judge Alsop held that the two cases were not distinguishable, and that plaintiffs were entitled to summary judgment.

■ We have given careful consideration to the record in the case, including the opinion of Judge Alsop, the briefs of the parties, and the arguments of counsel. No useful purpose would be served by expanding the literature that litigation over the validity of the Act has already produced. We hold that the district court did not err in ruling that this case and the *Allied* case are not distinguishable in any controlling respect, and that plaintiffs were entitled to summary judgment. We so hold largely on the basis of the opinion of the district judge, and we give due, although not controlling, regard to Judge Alsop's long association and familiarity with both of the two cases that originated in his court.

Affirmed.

---

8. The Commissioner is aided by an amicus curiae brief filed by an organization known as the "Gray Panthers," which is an activist group interested primarily in problems that elderly and retired people may encounter today.