# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 11-1817/3253
_____

Professional Firefighters Association of   *
Omaha, Local 385; Omaha Police   *
Officers Association, Local 101;   *
Omaha Civilian Employees   *
Association, Local 251; Civilian   *
Management, Professional and   *
Technical Employees Council; Jim   *
Anderlik; Michael Piernicky; Bill Love;   *
Terry Leahy,   *
  *
      Plaintiffs/Appellees,   *
  *
Rick Bergholz; Mark Allen Lloyd;   *   Appeals from the United States
Stephen Bosilevac; Stephen B. Tyler;   *   District Court for the
Dale A. Gruber,   *   District of Nebraska.
  *
      Intervenor Plaintiffs/Appellees,   *
  *
City of Omaha, a Municipal   *
Corporation; Jim Suttle, Omaha Mayor,   *
each in their official capacity; Ben   *
Gray, Omaha City Council Member,   *
each in their official capacity; Pete   *
Festersen, Omaha City Council   *
Member, each in their official capacity;   *
Chris Jerram, Omaha City Council   *
Member, each in their official capacity;   *
Jean Stothert, Omaha City Council   *
Member, each in their official capacity;   *
Franklin Thompson, Omaha City   *
Council Member, each in their official   *
capacity; Thomas Mulligan, Omaha   *

City Council Member, each in their     *
official capacity,     *
    *
      Defendants/Appellees,     *
    *
      v.     *
    *
James Conrad Zalewski,     *
    *
      Interested Party/Appellant.     *

_____

Submitted: November 17, 2011
Filed: May 7, 2012

_____

Before RILEY, Chief Judge, BEAM and BYE, Circuit Judges.

_____

RILEY, Chief Judge.

James Conrad Zalewski (appellant), as counsel for a group of sixty-four retired City of Omaha (city) firefighters and their families, appeals the district court's[1] approval of a class-action settlement agreement between the city and a certified class of active and retired city firefighters, police officers, civilian employees, and their unions. Appellant argues the district court abused its discretion in "fail[ing] to properly apply and interpret" Fed. R. Civ. P. 23 to "adequately address the conflict of interest" resulting from the same class counsel representing both active and retired employees. We disagree and affirm.

_____

[1]The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

-2-

## I.     BACKGROUND

The city reports it faces a severe long-term financial crisis caused, in part, by the rising cost of healthcare benefits for various active and retired city employees. Before May 18, 2010, an assortment of collective bargaining agreements (CBAs) and ordinances required the city to offer thirty-four different benefit plans to active and retired employees. Under those plans, 84% of retirees paid no premium for healthcare coverage for themselves or their dependents.

On May 18, 2010, the Omaha City Council (city council) passed Ordinance No. 38733, which (1) required retirees to pay premiums for healthcare calculated as a percentage of their city pension, and (2) reduced the number of healthcare plans from thirty-four to three—one for police, one for firefighters, and one for civilians. Beginning July 1, 2010, retirees would receive the same healthcare benefits as active employees. The city expected to reduce its annual administrative fees by $419,400, reduce other yearly administrative costs by $473,000, and receive more than three million dollars per year in premium payments from retirees.

The day the ordinance passed, four labor organizations[2] and four individual retirees[3] (collectively, plaintiffs) filed a nine-count declaratory judgment action against the city, Mayor Jim Suttle, and the members of the city council, seeking to enjoin them from enforcing the ordinance. The plaintiffs sought class certification for all active and retired city employees who received health benefits from the city. The city answered, asserting various affirmative defenses and counterclaims.

_____

[2]The labor organizations were (1) Professional Firefighters Association of Omaha, Local 385; (2) Omaha Police Officers Association, Local 101; (3) Omaha Civilian Employees Association, Local 251; and (4) Civilian Management, Professional and Technical Employees Council (CMPTEC) (collectively, unions).

[3]The four retirees were Jim Anderlik, a retired firefighter; Michael Piernicky, a retired police officer; Bill Love, a retired member of Local 251; and Terry Leahy, a retired member of CMPTEC.

On June 10, 2010, the district court entered a preliminary injunction enjoining the city from enforcing the ordinance. On June 28, 2010, the district court permitted five retired firefighters represented by Maynard H. Weinberg to intervene and participate to protect their interests. On July 16, 2010, the district court certified the proposed class under Rule 23(b)(3) and adopted three subclasses identified by plaintiffs in the complaint:

> (1) all former city employees who separated from employment for any reason and are entitled to and were receiving group healthcare coverage as city retirees as of May 18, 2010;

> (2) all individuals who received group health coverage from the city because they were, or will be "covered dependents" or spouses or survivors of covered retirees; and

> (3) all individuals who, as of May 18, 2010, were employed in positions within the city covered by CBAs or ordinances which entitle them to group health coverage when they retire or separate from city employment.

The certified class consisted of 10,286 active and retired city employees and their family members. The district court appointed Michael P. Dowd, John E. Corrigan, and Timothy S. Dowd of the law firm of Dowd, Howard & Corrigan, LLC as class counsel. In certifying the class, the district court found the unions and the individual retirees "are adequate class representatives and are appointed to represent the class of individuals meeting the class definition." The district court did not enter any specific findings on the need for separate counsel for the identified subclasses. Class counsel represented both active and retired employees, and Weinberg continued to represent the intervenors. The district court ordered class counsel to mail notice to each known class member advising them of their right to have the district court exclude them from the class. After receiving notice, several retirees opted out of the class.

On August 30, 2010, the morning trial was scheduled to begin, the city, the plaintiffs, and the intervenors announced they had agreed on a tentative class-wide settlement. After a hearing regarding the tentative agreement, the district court continued the trial to allow the parties to negotiate the specific written terms of the settlement. The city, the plaintiffs, and the intervenors participated in extensive negotiations.

On October 5, 2010, the parties and their counsel participated in a settlement conference mediated by United States Magistrate Judge F.A. Gossett. The conference dealt extensively with protecting the rights of the retirees. The settlement conference resulted in a tentative settlement agreement subject to approval by the class representatives, the city, and the intervenors.

The settlement agreement resolved three primary issues related to the healthcare benefits provided by the city: (1) current retirees' health insurance premiums were held at the rates the retirees were paying on the date the ordinance passed; (2) the city could reduce the number of healthcare plans to three by transferring retirees to the current plan available for active employees in the same bargaining unit; and (3) because retirees generally share the same plan as their active counterparts, retirees in each class received the right to elect a representative to represent them in future collective bargaining negotiations related to any potential changes to the health plans for such class. The retiree representative received the right to object to proposed changes to the applicable health plan negotiated by the unions and, upon a vote of the affected retirees, request that a neutral arbitrator review a claim that a proposed change is not "fair and reasonable to the retirees." If the arbitrator finds a proposed change is not fair and reasonable, the applicable union may not approve the tentative CBA and must renegotiate.

On October 20, 2010, the district court approved notice of the settlement and ordered the parties to provide the class with notice of the settlement agreement and

advise the class members of their rights to (1) object to the settlement agreement in writing and at the fairness hearing, and (2) opt out of the case and exclude themselves from the class. Of the 10,286 class members, only seventeen opted out—five of whom were retirees. Only 4% of the class objected to the proposed settlement, including appellant. All of the plaintiffs and intervenors approved the settlement agreement.

On December 6, 2010, the district court held a fairness hearing on the proposed settlement agreement. At the hearing, the district court allowed the objecting class members, including appellant, to voice their objections. Appellant objected to the settlement agreement, arguing there was an inherent conflict of interest between active and retired employees and the arbitration provisions were inadequate to protect the retirees' interests. The district court considered each of the objections to the settlement agreement, including appellant's assertion that there was "a conflict of interest between current and retired employee representation [and] the possibility of the active members being able to change the contracts on a whim to their benefit and to the detriment of the retirees."

On January 3, 2011, after "review[ing] the evidence and consider[ing] all objections," the district court approved the settlement agreement with some administrative modifications, finding "the proposed settlement is in the best interests of the plaintiff class and the intervenors, based on the claims and defenses in this action, its procedural posture, the anticipated time and expense of protracted litigation, . . . the fact that the available funds by the [c]ity are very limited, and failure to affirm this settlement may cause dire consequences for the [c]ity." The district court also found "that although there are some conflicts within the classes, e.g., retired versus current employees, the parties have been well represented during this process."

On January 24, 2011, the district court reiterated its finding that the settlement agreement was "fair and reasonable," but clarified its findings were (1) not final until expiration of the notice period required by 28 U.S.C. § 1715, and (2) "not intended to

be factual findings as to the effect of any provisions of the [s]ettlement [a]greement." On April 12, 2011, the district court entered a final consent decree, again finding the settlement agreement was "fair, reasonable, and adequate." Appellant appeals the district court's class certification and approval of the settlement agreement.

## II.   DISCUSSION
### A.    Standard of Review

"The district court is accorded broad discretion to decide whether certification is appropriate, and we will reverse only for abuse of that discretion." Rattray v. Woodbury Cnty., Ia., 614 F.3d 831, 835 (8th Cir. 2010). We also review the district court's approval of the settlement agreement as "fair, reasonable, and adequate" for an abuse of discretion. See Reynolds v. Nat'l Football League, 584 F.2d 280, 282 (8th Cir. 1978). "Only upon the clear showing that the district court abused its discretion will this court intervene to set aside a judicially approved class action settlement." Id. at 283. We afford the district court's views "[g]reat weight" because the district court "is exposed to the litigants, and their strategies, positions and proofs. [It] is aware of the expense and possible legal bars to success." Id. (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975)).

### B.    Class Certification and Appointment of Class Counsel

Appellant contends "[t]he district court abused its discretion by certifying this case as a class action" because "the same counsel cannot represent active and retired employees under [Fed. R. Civ. P.] 23(a)(4)." Appellant also contends the district court failed properly to apply Fed. R. Civ. P. 23(c) and (g) "to protect the interests of the class members" and "to make sure that the subclasses had proper representation."

> Rule 23(a)(4) permits certification of a class action only if the representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). . . . The district court must decide whether Rule 23(a)(4) is satisfied through balancing "the convenience of maintaining a class action and the need to guarantee adequate

representation to the class members." Wright v. Stone Container Corp., 524 F.2d 1058, 1061 (8th Cir. 1975).

Rattray, 614 F.3d at 835.

Appellant acknowledges the district court was "aware of the conflict issue" and took steps to address the potential conflict and ensure the class representatives, class counsel, and the intervenors would "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). But appellant contends "[t]he [district] court erred as a matter of law in failing to provide independent counsel for the retiree subclasses." We disagree.

Although we have noted the potential for conflict between the interests of active and retired employees, see Anderson v. Alpha Portland Indus., 752 F.2d 1293, 1297 (8th Cir. 1985) (en banc) (citing Allied Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co., 404 U.S. 157, 181-82 (1971)), appellant fails to support his contention that such conflict requires separate counsel as a matter of law. See Reynolds, 584 F.2d at 286 (explaining "theoretical conflicts of interest [between active and retired football players] did not require subclassification, disqualification of the named parties and class counsel, or disapproval of the settlement").

According to appellant, the Supreme Court's decision in Ortiz v. Fibreboard Corp., 527 U.S. 815 (1999), "dictates that separate counsel be utilized." In support, appellant quotes the Supreme Court's statement that

> [I]t is obvious after Amchem [Prods., Inc. v. Windsor, 521 U.S. 591 (1997)] that a class divided between holders of present and future claims (some of the latter involving no physical injury and attributable to claimants not yet born) requires division into homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel. See Amchem, 521 U.S. at 627, 117 S. Ct.

-8-

22[5]1 (class settlements must provide "structural assurance of fair and adequate representation for the diverse groups and individuals affected").

See Ortiz, 527 U.S. at 856. But appellant does not provide any supporting analysis.

Appellant's cursory argument fails to persuade us the Supreme Court's decision in Ortiz compels the conclusion that the district court in this case abused its discretion by not appointing separate counsel for the retirees, particularly absent a motion requesting separate counsel. Ortiz and Amchem were massive tort "class action[s] prompted by the elephantine mass of asbestos cases" that "defie[d] customary judicial administration." Ortiz, 527 U.S. at 821. The Supreme Court found the exceedingly divergent interests of present and future claim holders in those cases required separate counsel to address adequately the conflict. Id. at 855. But the need for separate representation under the atypical circumstances of Ortiz and Amchem does not make appointing separate counsel the only acceptable means of "addressing any conflicting interests of class members," id. at 821, and providing "structural assurance of fair and adequate representation" for the entire class, Amchem, 521 U.S. at 627.

The circumstances that favored separate counsel in Ortiz are not present here. Ortiz "turn[ed] on the conditions for certifying a mandatory settlement class on a limited fund theory under Federal Rule of Civil Procedure 23(b)(1)(B)." Ortiz, 527 U.S. at 821. In contrast, this case is a relatively straightforward declaratory judgment action seeking injunctive relief under Rule 23(b)(3). Rather than binding the retirees to a mandatory settlement and resolving their "legal rights . . . regardless of either their consent, or . . . their express wish to the contrary," Ortiz, 527 U.S. at 847 (footnote omitted), the district court provided two opportunities for the retirees to opt out of the case—once before the parties settled, and once after the parties explained the settlement terms to the class.

As we noted in <u>Petrovic v. Amoco Oil Co.</u>, 200 F.3d 1140, 1145-46 (8th Cir. 1999),

> <u>Amchem</u>, 521 U.S. at 601-02, 117 S. Ct. 2231, and <u>Ortiz</u>, 119 S. Ct. at 2305, each involved a situation in which the parties agreed upon a class definition and a settlement before formally initiating litigation, and then presented the district court with the complaint, proposed class, and proposed settlement. The difficulty inherent in such a situation is that the district court "lack[s] the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." <u>Amchem</u>, 521 U.S. at 620, 117 S. Ct. [2248].
>
> . . . .
>
> The difficulties associated with settlements like those in <u>Amchem</u> and <u>Ortiz</u>—the possibility of "collusion between class counsel and the defendant . . . [and] the need for additional protections when the settlement is not negotiated by a court designated class representative," <u>Hanlon v. Chrysler Corporation</u>, 150 F.3d 1011, 1026 (9th Cir. 1998)—are therefore not present here.

"We also do not believe . . . the stark conflicts of interest that the Supreme Court discerned in <u>Amchem</u> and <u>Ortiz</u> are present here." <u>Petrovic</u>, 200 F.3d at 1146. Though not entirely consistent, the interests of the active and retired city employees aligned in many significant ways, not the least of which was their driving interest to enjoin the city's enforcement of the ordinance. The conflicts appellant describes are far from the "extraordinarily various" injuries that sharply divided the interests of present and future asbestos claim holders in attempting to allocate the limited funds available in <u>Amchem</u> and <u>Ortiz</u>. <u>Id.</u> Indeed, as prospective retirees, the active employees shared an interest in protecting retiree rights.

Expressly cognizant of the potential conflicts in this case, the district court appointed individual retirees as class representatives and subdivided the class to

mitigate those potential conflicts. To further protect the interests of retirees, the district court permitted five retired firefighters to intervene with separate counsel and participate in settlement negotiations that focused extensively on protecting the retirees' interests. Those negotiations yielded significant safeguards built into the settlement agreement that the district court reasonably found adequate to protect the retirees from a future potential conflict, including a retiree representative during collective bargaining and a detailed arbitration process.

Throughout the class action, the district court monitored the efforts of the class representatives, class counsel, and the intervenors to ensure fair and adequate representation. After considering all of the objections to the settlement, the district court found "that although there are some conflicts within the classes, e.g., retired versus current employees, the parties have been well-represented during this process." The district court was aware of the potential conflict and took reasonable steps to address the retirees' concerns. Given the nature of this case and the potential conflict at issue, the district court did not abuse its discretion in certifying the class or by ensuring fair and adequate representation for the entire class by means other than appointing separate counsel for each subclass.

### C.    Settlement Agreement

Appellant also argues the district court, acting as a fiduciary, abused its discretion in accepting the settlement agreement under Rule 23(e) because it failed to protect the retirees' contractual right to "guaranteed insurance to age 65." "In approving a class settlement, the district court must consider whether it is fair, reasonable, and adequate." DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1176 (8th Cir. 1995) (quoting Van Horn v. Trickey, 840 F.2d 604, 606 (8th Cir. 1988) (internal quotation marks omitted)); see Fed. R. Civ. P. 23(e)(2).

To make that determination, the district court must consider "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's

financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement." In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 932 (8th Cir. 2005). "The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" Id. at 933 (quoting Petrovic, 200 F.3d at 1150).

After examining the evidence and considering the objections, the district court approved the settlement agreement, finding the agreement "in the best interests of the plaintiff class and the intervenors, based on the claims and defenses in this action, its procedural posture, the anticipated time and expense of protracted litigation, . . . the fact that the available funds by the [c]ity are very limited, and failure to affirm this settlement may cause dire consequences for the [c]ity." In approving the settlement, the district court made some administrative modifications to further protect the interests of the retirees.

The city contends the settlement agreement is fair, reasonable, and adequate because all of the employees faced substantial risk in going to trial and received what the district court aptly described as "major concessions" from the city, including the retirees avoiding benefit reductions and three million dollars per year in premium payments. The city also emphasizes (1) its credible argument that the plain language of the CBAs permitted the changes contemplated by the ordinance; (2) the possibility the city's dire financial situation would allow it to avoid any vested rights the employees might have had, see White Motor Corp. v. Malone, 599 F.2d 283, 287 (8th Cir. 1979) ("In the legitimate exercise of its police power a State may 'impair' by 'altering' the terms of a private contract, and the legislative action may either lighten or increase the obligations of the contractual obligor."); (3) the "very rich benefit plan" the retirees received; and (4) the "substantial broad support for the agreement" from the entire class, with only a small number of class members objecting or opting out.

Appellant maintains the retirees "had a contractual promise of health insurance coverage until they became eligible for Medicare" and "were deprived of that right without proper representation." According to appellant, class counsel's conflict of interest led them to compromise unnecessarily the retirees' rights in the settlement agreement, making the agreement unfair and inadequate. Appellant's argument is unavailing.

The district court did not abuse its discretion in approving the settlement agreement. Appellant's argument to the contrary essentially boils down to his belief that compromise was unnecessary because he would have prevailed at trial. Appellant ignores the substantial risk the plaintiffs would not prevail and the city would enforce the ordinance, dramatically changing the retirees' health benefits. Appellant falls far short of establishing the settlement agreement was unfair or inadequate simply because the retirees did not get as much as they believed they should. The settlement agreement specifically addressed many of the concerns retirees shared with active employees and established specific procedures to protect the retirees where those interests may diverge. The district court's conclusion that the agreement was a fair, reasonable, and adequate settlement for all of the class members was well within its discretion.

### D.    Special Hearing

Notwithstanding appellant's extensive discussion of the potential conflict between active and retired employees at the fairness hearing, appellant argues the district court abused its discretion under Rule 23(d) by failing to hold a special hearing on the ability of class counsel to represent the subclasses. Appellant's argument fails for two reasons. First, appellant fails to show anything in the language of Rule 23(d) that would require such a hearing. See Fed. R. Civ. P. 23(d). Second, appellant admits he did not ask for a special hearing or object when the district court did not hold one. Appellant waived any purported right to a special hearing he now claims to possess. See Corn Plus Coop. v. Cont'l Cas. Co., 516 F.3d 674, 680 (8th Cir. 2008) (explaining

"arguments raised for the first time on appeal are generally not considered" because they are waived).

Appellant's remaining arguments are without merit.  <u>See</u> 8th Cir. R. 47B.

## III.  CONCLUSION
We affirm.

_____