# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1818

_____

Ian Pollard

*Plaintiff - Appellee*

v.

Remington Arms Company, LLC; Sporting Goods Properties, Inc.; E.I. Du Pont
Nemours and Company

*Defendants - Appellees*

v.

Terry Pennington; Rodney Townsend

*Objector*s

Lewis M. Frost; Richard Denney

*Objectors - Appellants*

------------------------------

Commonwealth of Massachusetts; District of Columbia; State of California; State
of Hawaii; State of Illinois; State of Maine; State of Maryland; State of New
Mexico; State of New York; State of Oregon; State of Pennsylvania; State of
Rhode Island; State of Vermont; State of Washington

*Amici on Behalf of Appellant(s)*

State of Alabama; State of Arkansas; State of Louisiana; State of Michigan; State of Missouri; State of Nebraska; State of South Carolina; State of South Dakota; State of Utah; State of West Virginia; State of Wisconsin

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 14, 2018
Filed: July 25, 2018

_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Ian Pollard and others brought a class action complaint against Remington Arms Company, LLC; Sporting Goods Properties, Inc.; and E.I. Du Pont Nemours and Company (collectively "Remington"), in which they alleged certain Remington rifles were susceptible to unintentional firing without a trigger pull. Among other things, the class members sought to require Remington to repair or replace their firearms. After extensive settlement negotiations, the parties finalized a nationwide settlement. Appellants Lewis M. Frost and Richard L. Denney ("objectors") appeal the district court's[1] order granting final approval of the class action settlement agreement. On appeal, the objectors argue that the district court abused its discretion by approving a class action settlement that utilized an inadequate notice plan and one that provided inadequate relief to class members. We find no error and affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

## I.    Background

This action was commenced against Remington on January 28, 2013, alleging that design flaws associated with the Walker Fire Control made Remington rifles dangerous and unfit for use. The Walker Fire Control is a two-piece trigger design for bolt-action rifles first introduced by Remington in 1948 as a safety improvement design. The parties estimated that since 1948 approximately 7.5 million firearms were produced with the Walker Fire Control design. The complaint also alleged violations of Missouri law premised on Remington's alleged knowledge of the dangerous condition, failure to issue an adequate warning or recall, and false representations to the public that the firearms were trustworthy, safe, and reliable.

During settlement negotiations, Remington discovered that its X-Mark Pro assembly process created the potential for excess bonding, which could lead to discharge without a trigger pull. Remington voluntarily recalled the affected firearms. The parties proposed two classes for certification: Class A, consisting of four subclasses; and Class B, consisting of two subclasses:

**Class A(1):** All current owners of Remington Model 700, Seven, Sportsman 78, and 673 firearms containing a Remington trigger mechanism that utilizes a trigger connector. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "Trigger Connector Class").

**Class A(2):** All current owners of Remington Model 710, 715, and 770, firearms containing a Remington trigger mechanism that utilizes a trigger connector. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their

families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "Trigger Connector Class").

**Class A(3):** All current owners of Remington Model 600, 660, and XP-100 firearms containing a Remington trigger mechanism that utilizes a trigger connector. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "Trigger Connector Class").

**Class A(4):** All current owners of Remington Model 721, 722, and 725 firearms containing a Remington trigger mechanism that utilizes a trigger connector. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "Trigger Connector Class").

**Class B(1):** All current owners of Remington Model 700 and Model Seven rifles containing an Xmark Pro trigger mechanism manufactured from May 1, 2006, to April 9, 2014, who have not participated in the voluntary X-Mark Pro product recall. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "X-Mark Pro Class").

**Class B(2):** All current and former owners of Remington Model 700 and Model Seven rifles who replaced their rifle's original Walker trigger mechanism with an X-Mark Pro trigger mechanism manufactured from May 1, 2006, to April 9, 2014. Excluded from the class are: (a) persons who are neither citizens nor residents of the United States or its territories; (b) any Judge or Magistrate Judge presiding over the action and members of their families; (c) governmental purchasers; (d) Remington Arms Company, LLC, Sporting Goods Properties, Inc., E.I. du Pont Nemours and Company, and each of their subsidiaries and affiliates (the "X-Mark Pro Class").

The parties engaged in a nearly year-long process involving mediators and experts, which eventually led to the settlement. The process included five full day, in-person mediation sessions. Among the terms of the settlement, some class members are entitled to receive a trigger replacement while others are entitled to receive a $10 or $12 voucher. A retrofitted trigger is valued at approximately $70.00.

On July 2, 2014, the parties filed a notice of settlement. The proposed settlement provided benefits in the form of retrofitted triggers, vouchers, and/or reimbursement for replacing the firearm's original trigger mechanism to United States residents who owned certain Remington rifles manufactured from 1948 to the present. In exchange for these benefits, class members would release claims associated with the firearms but the settlement terms exempted claims for personal injury or property damage. The parties' proposed notice plan included: (1) a joint press release; (2) direct notice; (3) short form notice; (4) long form notice; (5) notice through a settlement website; and (6) notice through social media and the internet.

In February 2015, the district court held a hearing and preliminarily approved the settlement, conditionally certified settlement classes, approved the notice plan, appointed a class action settlement administrator, and appointed class counsel. A final approval hearing was set for December 14, 2015.

The parties executed the court-approved notice plan. Postcard notices were sent to approximately 2,500 individuals who paid Remington for trigger replacements. A settlement notice was published in several magazines with a combined circulation of more than 36 million. Poster-sized notices were mailed to nearly 700 vendors known to have mailed in a Remington firearm seeking a trigger replacement. A joint press release appeared on at least 225 websites, which was estimated to have reached a potential audience of more than 21 million people. Internet banners displayed the notice more than 970,000 times. Some Facebook advertising was also utilized. Despite these efforts, only 2,327 claims were submitted. The class action administrator handled 5,390 calls.

On December 8, 2015, concerned about the claim submission rate, the court cancelled the final approval hearing. The court explained that the claim submission rate of 0.1% (assuming all 7.5 million firearms are still in circulation) was "quite low" in light of the millions of firearms that were potentially affected. The court directed the parties to develop a supplemental notice plan that would be more "effective" and "result in a more significant response rate." In addition, an objector had inquired with the court about whether the settlement agreement could be construed to waive personal injury claims. The court directed the filing of supplemental briefing to address this issue and others.

A "second" preliminary approval hearing was held on August 2, 2016. As of the date of this hearing, more than 6,500 claims had been submitted. The court directed the parties to consider potential modifications to the proposed supplemental notice plan. The parties modified the terms of the settlement agreement, but none of the benefits inuring to class members changed. In part, the paragraphs that had raised concern about potential waiver of personal injury claims were removed.

On August 23, 2016, the court preliminarily approved what was now the fourth amended settlement agreement. The court also approved the parties' supplemental

notice plan, which consisted of (1) a targeted social media campaign administered by Signal Interactive Media; (2) a targeted national radio campaign directed at generating more than 61 million impressions and administered by Signal Interactive Media; (3) email notification to approximately one million individuals whose email addresses were culled from Remington's internal databases; (4) postcard mailings to approximately 93,000 individuals for whom Remington had a mailing address but no email address; and (5) posters displayed at more than 11,000 retail locations. By January 13, 2017, there were 19,425 claims received. Of these claims, 2,666 claims purportedly experienced accidental discharge. Of the 2,666 claims with alleged accidental discharge, 788 individuals claimed personal injury or property damage.

The district court held the final approval hearing on February 14, 2017. At the time of the hearing, 22,000 claims had been submitted. The claim submission rate had increased to 0.29%, assuming, again, that all 7.5 million firearms remain in circulation. The claims period closes 18 months after resolution of this appeal and thus additional claims are expected to be submitted. Thus, the final claim submission rate is anticipated to be higher.

Several objections were received urging the court not to approve the settlement agreement. In a lengthy order, the district court concluded that the requirements for class certification under Rule 23(a)(4) and Rule 23(b) of the Federal Rules of Civil Procedure had been met. The court explained in detail that while it was disappointed with the claim submission rate, the notice satisfied Rule 23, as the best practical notice under the circumstances. The court overruled objections to the proposed settlement and found that it was "fair, reasonable and adequate, and in the best interests of the parties and the settlement class members when balanced against the risks and benefits of further litigation." The court approved service award payments in the amount of $2,500 to each class representative and approved $12.5 million in attorney's fees to class counsel minus costs and expenses in the amount of $474,892.75.

## II.    Discussion

We apply an abuse of discretion standard to a district court's approval of a class settlement, including a determination that notice is the best practicable under Rule 23. See Grunin v. Int'l House of Pancakes, 513 F.2d 114, 118 (8th Cir. 1975).  The objectors argue that the district court abused its discretion by (1) approving a class settlement that utilized an inadequate notice plan, and (2) approving a settlement that does not provide adequate relief to the class.  We disagree.

### A.    Adequacy of Notice

The objectors argue that the district court abused its direction by approving an inadequate notice plan that failed to reach most of the class.  The objectors make much of the low claim submission rate.[2]  Their argument assumes that class members did not receive notice and ignores the possibility that class members received notice but decided against submitting a claim.  They assert that direct notice should have been provided to millions more class members.

Rule 23(c)(2), Fed. R. Civ. P., provides guidance to district courts with regard to notice to be provided to class members.  In a class action certified under Rule 23(b)(3), the rule provides for "the best notice that is practical under the circumstances, including individual notice to all members who can be identified through reasonable effort."   The requirement for the best notice practical "is

---

[2]We note that when a substantial portion of the class members are entitled to a *de minimis* benefit, such as a $10 to $12 voucher, a low response rate may not be a relevant consideration to an appellate court reviewing the adequacy of class notice. Here, in light of the public safety concern about the potential for unintentional discharge of a firearm combined with the fact that most of the class members were eligible for a more substantial benefit, we have considered the low response rate when reviewing whether the notice plan approved by the district court was adequate.

essentially an interest in due process." Smith v. SEECO, Inc., 865 F.3d 1021, 1025–26 (8th Cir. 2017) (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173-74 (1974)).

The court took great care to ensure the best notice that was practical was provided to class members. When the initial claim submission rate was suspiciously low under the initial notice plan, the district court cancelled the final approval hearing and required the parties to propose a supplemental notice plan. They did so. The supplemental plan included a social media campaign, radio advertising, email notices, direct mailings, and posters. The parties informed the district court that they believed the supplemental notice plan reached 73.7% of class members, although the objectors believe the percentage is closer to 49%. After reviewing the record, we find that the supplemental notice plan was far-reaching and utilized several types of mediums to communicate with potential class members and was clearly more effective than the initial plan, as evidenced by the increase in the claim submission rate.

In the end, the low claim submission rate, while not ideal, is not necessarily indicative of a deficient notice plan. It is apparent that many class members received notice, but opted not to participate for any number of reasons. Perhaps they are satisfied with their firearms and see no reason to submit a claim. Class members that are entitled to a $10 or $12 voucher might find that the effort it takes to submit a claim is not a worthwhile investment of their time. Still other class members might not want to send their firearm in to be retrofitted and be without it for an unknown period of time. Others might not trust the government or lawyers and do not want to reveal their firearm ownership or become part of any firearm registry. We are mindful that while the claim submission rate is not desirable, the notice plan was adequate and satisfied the methods and mechanisms for disseminating notice set forth in Rule 23 of the Federal Rules of Civil Procedure. The district court did not abuse its discretion in approving the notice plan.

*B.     Adequacy of Relief*

The objectors have raised a number of issues on appeal with regard to the terms of the settlement, including that the settlement benefits were inadequate, the benefits provided disparate treatment because they were based on the type of rifle owned, their belief that "simpler" solutions were available, and their assertion that the amount awarded to class counsel was too much when compared to the amount that will be paid to satisfy the claims.

In approving a class settlement, the district court is to "consider whether it is fair, reasonable, and adequate." Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski, 678 F.3d 640, 648 (8th Cir. 2012) (quoting DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1176 (8th Cir. 1995)). "Great weight is accorded [the district court's] views because [the judge] is exposed to the litigants, and their strategies, positions and proofs. [The judge] is aware of the expense and possible legal bars to success. Simply stated, [the judge] is on the firing line and can evaluate the action accordingly." Grunin, 513 F.2d at 123 (quoting Ace Heating & Plumbing Co. v. Crane Co., 453 F.2d 30, 34 (3d Cir. 1971)). We will set aside a judicially approved class action settlement "[o]nly upon a clear showing that the district court abused its discretion." Id. (citation omitted).

We have carefully reviewed the record. In determining whether to approve the settlement, the district court balanced the strength of the class members' claims against the settlement terms, considered Remington's financial condition, analyzed the complexity and expense of further litigation, and reviewed the opposition to the settlement. The objectors ignore the substantial risk that they would not prevail if this litigation had continued. See Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1150 (8th Cir. 1999) (reaffirming that the most important consideration is the strength of the case balanced against the amount offered in settlement). As noted by the district court in its detailed order, the statute of limitations bars a vast majority of the class

members' claims. As to the claims that are not time-barred, Remington has vigorously defended against claims that its firearms are defective. Another obstacle for the objectors is the known difficulty in establishing defect and causation in light of the prior verdicts returned in Remington's favor on personal injury claims. Given the value of each objector's claim, pursuit of a claim outside of the context of a class action would not be worthwhile.

The parties removed personal injury and property damage claims from the terms of the settlement agreement. They also removed differences among state law by agreement. We have found that a settlement agreement is not rendered unfair because it does not account for differences in state laws. Keil v. Lopez, 862 F.3d 685, 700 (8th Cir. 2017).

The record makes plain that the settlement agreement was reached following meaningful discovery and investigation by class counsel and arm's length negotiations between the parties. We conclude that the settlement was fair, reasonable, and adequate, and we affirm the district court's order approving the settlement.

## III. Conclusion

The judgment of the district court is affirmed.

_____